CITED *in Newark* ads. *State,* 3 *Vr.* 455; *State* v. *Kelly, Coll.,* 5 *Vr.* 78.

---

THE STATE (MICHAEL MALONE, Prosecutor), *vs.* THE MAYOR AND COMMON COUNCIL OF JERSEY CITY.

1. Commissioners appointed under the 52d section of the act to incorporate Jersey City (*Pamph. Laws* 1851, *page* 414,) must show, upon the face of their report, schedule, or map, that the expenses for flagging, &c., streets in said city have been assessed by them upon the lands benefited in proportion to the benefit.

2. An assessment upon each lot according to the amount of frontage, without regard to the benefit accruing to the lot, is invalid.

3. Where a petition and notice are for grading and paving a street, and an ordinance is passed in pursuance thereof, which provides in detail for filling, paving, curbing, guttering, laying the crosswalks and intersections, and flagging the sidewalks, the ordinance is not invalid on the ground of variance between it and the petition and notice.

4. If an ordinance require notice to be given of the time and place of meeting to receive and consider objections to opening a street, but does not expressly require the notice to be given by common council, a notice given by the clerk is a sufficient compliance with the ordinance, if adopted and acted upon by common council.

5. If the notice limit objections to those made in writing, neither a person who appears and makes objections in writing nor those who do not appear can afterwards object to the form of the notice.

6. It is not necessary to obtain the consent of the owners of a majority of the lots to grade and pave a street in Jersey City, unless the street, or a portion of it, is without the limits of the improved part of the city.

7. The charter of Jersey City requires the common council to appoint four commissioners, one in each ward, and that each one shall be a resident and freeholder in the ward for which he shall be appointed : a report made by them will not be invalid because it does not appear that the commissioners had the qualifications required by their charter.

On *certiorari* to set aside assessment for grading a street in Jersey City.

Argued before Justices OGDEN, WHELPLEY, and VRE-DENBURGH.

*I. W. Scudder,* for plaintiff in *certiorari.*

*R. D. McClelland,* for defendants.

WHELPLEY, J. This writ brings before the court for review the assessmemt made upon the property of Malone, the prosecutor, for filling in to the established grade, curbing, guttering, paving, laying sidewalks, and flagging them, in Warren street, between Montgomery and Morgan streets, in Jersey City.

On the 4th of December, 1855, Malone and others presented a petition to the common council, asking the passage of an ordinance requiring Warren street, between these two points, to be graded and paved.

On the 11th of March, 1856, the ordinance under which the assessment was made was passed. It required that the said street be filled into the established grade, curbed, guttered, paved, bridge-stone crosswalks laid at all the intersections, and the sidewalks flagged four feet wide.

On the 6th of January, 1857, the commissioners for assessment reported to the common council the assessment in question.

On the 17th of March, 1857, the common council, by resolution, confirmed the assessment, which resolution was approved by the mayor on the 23d March, 1857.

By the assessment, six lots of the prosecutor on Warren street, marked on the map accompanying the assessment as

lots 66, 67, 68, 69, 70 and 71, were assessed in the aggrepate three hundred and seventy-one dollars and forty-two cents.

The first reason assigned for setting aside the assessment is, that the petition and notice and the ordinance do not agree in this, that the petition and notice are not as specific as the ordinance ; that the former only speak of paving and grading the street, while the ordinance provides in detail for the filling in, paving, curbing, guttering, laying the crosswalks and intersections, and flagging the sidewalks.

The petition and notice upon which the ordinance is founded sufficiently describe the contemplated improvement, the terms grading and paving fully and fairly comprehend all the particulars specified in the ordinance, all that is necessary to fully grade and pave the street. The ordinance of 28th July, 1843, requires the notices to specify the nature and extent of the improvement ; grading and paving is a sufficient specification.

The several reasons relied upon were, that the common council did not, in this specific case, direct the clerk to give notice of the application, but that it was done in pursuance of a resolution, passed May 17th, 1853, directing the clerk to give the notice in such cases. It was further objected that this last resolution has not been approved by the mayor.

It was held by this court, in the case of *The State, Durant, prosecutor,* v. *Jersey City,* which was the case of a proceeding for opening a street, " that under the 55th section of the charter, the common council must fix a time for the hearing of persons interested, and give notice of the time and place of hearing, and that a failure in this particular to comply with the charter was fatal to the ordinance ; that the fixing of the time and place by the clerk in his notice was not sufficient."

It is a sufficient answer to this objection, that neither the charter nor the ordinance regulating the proceedings

in case of grading and paving streets require the time and place of hearing to be final by the common council.

The charter directs that all propositions for such improvements shall be advertised by the common council for twenty days before the same are adopted.

The ordinance of July 23th, 1853, directs that ten days' notice shall be given in a newspaper of such application and of the time and place of meeting to receive and consider any objections

The notice of the time and place of meeting was given; that is sufficient, if adopted and acted upon by the common council.

Objection was also made to this notice, that it limited the objections to those made in writing; no person appeared to object, either in writing or verbally against the passage of the ordinance; no one was deprived of his rights by the form of the notice.

It will be recollected that this is an objection to the notice given upon the petition of Malone himself. He asked the common council to pass the ordinance.in question. It would, it seems to me, be gross injustice to listen to an objection coming from him, that he had no opportunity of objecting to the ordering of an improvement which he had petitioned common council to order. Malone appeared, and objected in writing to the assessment, but he did not complain of the passage of the ordinance.

It was further objected that it did not appear that the consent of the owners of a majority of the lots had been obtained  This was not necessary, unless the street, or a portion of it, lay without the limits of the improved part of the city, or there were no buildings upon it. It does not appear that, in regard to this street, this was the case, and it was proved that this was a settled part of the city.

The return made to the court shows that the commissioners were disinterested and impartial freeholders resident in the city.

This return is made to the court under the charter of

1851. That act does not give the power to the commissioners to certify anything more than the principle of valuation, when called upon by the court for that purpose. The *certiorari* was not directed to them; they cannot foist into a return authorized by law matter which has no place there, and if they do, it is not by this proceeding brought before the court.

By the act of March 16th, 1854, the common council is required, in lieu of the commissioners required by the 52d section of the charter, to appoint a board of commissioners, consisting of four commissioners, one from each ward of the city, who shall be a resident and freeholder in the ward from which he is appointed. At a meeting of the common council, held upon the 24th of June, 1856, it appears that David Gould, Jacob A. Vanbuskirk, James S. Hutton, and James S. Narine were appointed such board; but it does not appear that they were residents and freeholders in the ward from which they were appointed, nor do I think it necessary that it should appear by this return that they were so. They were permanent officers of the city, not a mere set of commissioners appointed for a particular case. It is no more necessary that their particular qualification should be set forth than those of any other officer of the city, as the mayor, the city clerk, or the members of common council. This objection is not well taken.

The next objection was, that there was no such report as the law requires made by the commissioners. This will depend upon the report made to the common council. That cannot be aided by the return made to this court, except upon the principles of valuation acted upon by the commissioners.

The 52d section of the act requires the commissioners to examine into the whole matter, to determine and report in writing to the common council what real estate ought to be assessed for such improvement, and what proportion of such expenses shall be assessed to each sepa-

rate parcel or lot of land, and to accompany such report with a map containing each lot assessed, and the name of the owners thereof.

The report in fact states that the board of commissioners have ascertained and assessed the expenses of the improvement, and have examined into the whole matter, and have determined what real estate ought to be assessed for such improvement, and what proportion of such expenses shall be assessed to each separate parcel or lot of ground, together with the names of the several owners thereof, and have caused to be made under their direction, by Messrs. J. B. and D. E. Culver, city surveyors, a map and schedule containing a full statement thereof, which they had signed and approved, and presented with the report to the council.

The report and map, taken together, show a compliance with the provisions of the charter, if the principle adopted to ascertain what property is benefited, and the proportionate benefit received, be correct ; for upon that principle, if the front and position of the lot upon the street and side-intersecting streets be given, it becomes a matter of mere arithmetical calculation how much each lot is to be assessed. No discretion is exercised by the board ; they add up the various bills of expenses, and divide the amount by the number of feet of frontage upon the street, and thus ascertain how much per foot each owner's lot is to be assessed, using a slight modification of the rule to distribute the costs of the intersections in part upon the intersecting streets.

In the case of *The State* v. *The City of Hudson,* 3 *Dutcher* 214, this court, in setting aside an assessment made in the same way, say it was the duty of the commissioners, in the first place, to ascertain all the lands benefited by the expenditure, and to adjudicate the amount each was to pay in proportion to the benefit ; because it did not appear that they had so done, but had adopted the frontage rule, the assessment was set aside.

The same doctrine was applied by this court in the case of *The State* v. *The Mayor, &c., of Hudson City*, setting aside the assessment in the case of Palisade avenue.   In the case first cited, the court say, if the rule was adopted, there was no necessity of the gravity of a commission ; the clerk of the council could have done it without leaving his office. It was only one sum in simple addition, and another in long division.

In this case the commissioners have reported to this court, under the rule taken upon them, that in making this assessment they did adopt the frontage principle.

The case is within the two cases already cited, and must be controlled by those decisions ; the language of the charter of Hudson City and that of the charters of Jersey City upon this subject are identical.   The expenses are to be assessed upon and paid by the lands and real estate benefited by the same, in proportion to the benefit received.   The commissioners are to determine what real estate ought to be assessed for the improvement, and how much each lot ought to pay.   They have abnegated entirely this duty, by determining that they are not to determine these questions, because they have been already determined by the geometrical position of the lots.   They have construed the act as if it had declared that the assessment should be divided among the lots fronting upon the street in proportion to the frontage.   If the legislature had desired that rule to be applied in apportioning the benefits received from the improvement, they would not have failed to do so.   There was no difficulty in the enunciation of the principle, but they not only failed to do it, but declared a rule obviously inconsistent with any such rule, by imposing upon the commissioners the duty of deciding what property ought to be assessed, and declaring that in so doing they should be guided by the rule of assessing in proportion to the benefits received. The idea, that the whole thing was determined beforehand by the simple location of the lots on the street and

their frontage is necessarily excluded. Plainer language could not have been used to require the commissioners to exercise their sound discretion and judgment upon the question in the case of each particular lot, after they had determined what lots were benefited, looking at the position of the real estate, its value, the purposes to which it could be applied, the use to be made by the owners of the improvement, the probable enhancement of the value of the real estate, and all other considerations which could throw light upon the ultimate point to be determined, how much the particular lot to be assessed was benefited by the improvement.

I cannot avoid coming to the conclusion that the commissioners did nothing more in this case than walk into the city surveyor's office, and sign the map and report prepared by them; certainly if the rule they adopted was correct, doing anything more would have been a work of time.

It was urged, by the counsel for the city, that this mode and principle of assessment had been long adopted, and was the only practicable mode of distributing the expenses. It may, and doubtless is the most convenient mode for the officials concerned; it saves all trouble, all exercise of judgment, requires no thought, no weighing of troublesome and perplexing considerations; but it seems to me to be quite clear that the rule is unjust and unequal in its operation, often imposing upon property not benefited by the improvement, but injured by the opening of the street, a large share of the expenses, and entirely exonerating from the burthen the owners of property who need the use of the thoroughfare for convenience of access to their property.

The assessment should be set aside, as made upon erroneous principles.

VREDENBURGH, J. This is a *certiorari*, brought to set aside the assessment made by the commissioners ap-

pointed by the defendants to ascertain and assess the expenses for filling in Warren street, from Morgan to Montgomery streets.

The first reason assigned is, that the assessment was insufficient, contrary to law, and not authorized by the act.

The act incorporating Jersey City, *Pamph. Laws* 1851, *p.* 414, § 52, provides that all such expenses shall be assessed upon and paid by the lands benefited in proportion to the benefit, and assessed by a board of commissioners appointed for one year, who shall examine into the whole matter and shall determine and report in writing what real estate ought to be assessed for such improvement, and what proportion of such expenses shall be assessed to each separate parcel or lot of land, and shall accompany such report with a map containing each lot assessed, and the name of the owner, which report and map shall be filed and recorded in the assessment book; and if the council shall confirm said assessment, it shall constitute a lien on the property assessed.

On the 6th of January, 1857, the board of commissioners reported as follows to the defendants: "that we have ascertained and assessed the expenses for regulating Warren street, and examined into the whole matter, and have determined what real estate ought to be assessed for such improvement, and what proportion of such expenses shall be assessed on each separate parcel or lot of ground, together with the names of the several owners thereof, and have caused to be made under our direction, by J. B. and D. C., city surveyors, a map and schedule containing a full statement thereof, which we have signed and approved, and present herewith."

The map referred to and accompanying the report is headed as follows :

" Assessment map for regulating Warren street, from Morgan to Montgomery streets, including intersections."

This map contains—

1st. The bill of expenses, making an aggregate of $4033.93.

2d. A map of all the lots on Warren street between Montgomery and Morgan streets, with the intersections, and a number of other lots on streets intersecting Warren street, between Montgomery and Morgan streets, and numbered, respectively, from 1 to 170.

3d. A statement containing, in column one, the names of the owners; in column two, the number on the lot on the map of which he is the owner; in column three, the amount of earth work for each lot, and its cost at a given price per yard; No. 5, the quantity of curbing, and its cost; No. 6, the guttering, and its cost; No. 7, the flagging; No. 8, incidental expenses; No. 9, the cost of intersections; and No. 10, the total amount. The sum totals are footed up at $4033.93; and this is all that is said by either the report, the schedule, or the map.

There is one fatal defect about this report, map, and schedule. The act of 1851, above referred to, expressly enacts that such expenses shall be assessed upon the real estate benefited thereby *in proportion to the benefits received.*

It no where appears, either upon the report, the schedule, or the map, that the assessment was made by the commissioners upon the lands, in proportion to the benefits received. This should have appeared upon the face of the report itself in affirmative terms. The great and leading object in appointing the commission was to get its discretion upon this very matter. It was almost the only thing for which the commission was wanted. The report, indeed, states that they have determined what proportion of such expenses shall be assessed to each separate parcel. But it does not, nor does the map or schedule, show how they measured the proportion, whether according to the number of front feet, or according to the quantity of work done in front of each lot, or according to the benefit each lot received; but, on the contrary, they show that each lot was assessed not in proportion to the

2 U*

benefit received, but each lot is charged with the precise amount of work done in front of it. Thus, lot 8, which fronts 25 feet on Montgomery street, and has its side of 100 feet on Warren street, is charged for the one half of the whole excavation, paving, guttering, curbing, and flagging for the whole one hundred feet on Warren street, amounting to $194, while No. 68, which is over 100 feet deep, with 25 feet front on Warren street, and has no other outlet, is assessed for the one half of the whole done in front of it, amounting to only $50, and so it runs through the whole map. It no doubt saves the commissioners a good deal of unpleasant duty to order the city surveyor to make a map of each lot, and calculate the number of yards of excavation, filling, &c., in front of each, and then for the commissioners to approve of these mathematical results ; and this is all they have done in the present case. But this was the very point where the duties of the surveyor ended, and those of the commissioners commenced. They stopped short at the precise point not at which their duties ended, but at which their duties began. The only thing they were appointed to do they have taken care not to touch.

It may be that the proportional benefit to each lot was the precise amount of work done in front of it, or such might have been the judgment of the commissioners. But they have not said so, and we cannot infer it, either from their report or the nature of things. 2 *Dutcher* 450.

Let the assessment, as regards the prosecutors, be set aside.

OGDEN, J., concurred.

CITED *in* State v. *Fuller*, 5 *Vr.* 232; *State* v. *Gardner.* 5 *Vr.* 331; *State* v. *May., &c., of Newark*, 7 *Vr*, 172; *State* v. *May., &c. of Hoboken*, 7 *Vr.* 292.